UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

RONALD DELORME,

                    *Plaintiff*,                              **MEMORANDUM AND ORDER**

        -against-                                            17-CV-6909(KAM)(ST)


NEW YORK AUTOMOTIVE AND DIESEL
INSTITUTE and YESID CABALLERO,
*individually and as an aider and
abettor*,

                    *Defendants*.

---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        On November 27, 2017, Ronald Delorme ("plaintiff" or

"Mr. Delorme") commenced this action, bringing claims of

discrimination based on his race and national origin, and

alleging unlawful retaliation, pursuant to Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title

VII"); the New York State Human Rights Law, N.Y. Exec. Law §§

290 *et seq.* ("NYSHRL"); and the New York City Human Rights Law

("NYCHRL"), New York City Administrative Code § 8-107, *et seq.*,

as amended.  Plaintiff alleges racial and/or national origin

discrimination and retaliation by defendants New York Automotive

and Diesel Institute ("NYADI") and NYADI's Director of Student

Services, Yesid Caballero (together, "defendants").

Presently before the Court is defendants' motion for summary judgment. (ECF No. 42, Motion for Summary Judgment; *see* ECF No. 44, Defendants' Memorandum of Law in Support; ECF No. 47, Defendants' Reply Memorandum of Law.) Plaintiff opposes the motion. (*See* ECF No. 46, Plaintiff's Memorandum of Law in Opposition ("Pl. Opp.").) For the reasons provided below, the Court GRANTS defendants' motion for summary judgment in its entirety.

## BACKGROUND

The following timeline of events is taken from the parties' filings pursuant to Local Civil Rule 56.1.[1] (*See* ECF No. 43, Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def.'s 56.1 Stm't"); ECF No. 46-1, Plaintiff's Objections to Defendant's Rule 56.1 Statement ("Pl. 56.1 Stm't").) The Court has considered whether the parties have proffered admissible evidence in support of their purported undisputed or disputed facts, and has viewed the facts in a light most favorable to plaintiff.

---

[1] Local Civil Rule 56.1 provides that a party moving for summary judgment "shall annex[] to the notice of motion a separate, short and concise statement . . . of the material facts to which the moving party contends there is no genuine issue to be tried." L. Civ. R. 56.1(a). The party opposing the motion must "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party" with the opposition. Local Civ. R. 56.1(b). Each of these paragraphs must cite to admissible evidence. L. Civ. R. 56.1(c). Facts supported by admissible evidence that were not contradicted by citations to admissible evidence are deemed admitted. *See Ferraro v. New York City Dep't of Educ.*, 404 F. Supp. 3d 691, 698 (E.D.N.Y. 2017), *aff'd,* 752 F. App'x 70 (2d Cir. 2018).

2

## A. The Parties

Mr. Delorme was born in Haiti and identifies as black. (Def.'s 56.1 Stm't ¶ 2.) Defendant NYADI is an automotive career school, located in Jamaica, New York, licensed by the New York State Department of Education, nationally accredited by the Accrediting Commission of Career Schools and Colleges, and certified by the National Automotive Technician Education Foundation. (*Id*. ¶ 3.) Defendant Yesid Caballero commenced employment with NYADI on March 25, 2015, as Director of Student Services/Training and Development. (*Id*. ¶ 4.) As Director of Student Services/Training and Development, Mr. Caballero's responsibilities included overseeing students, pedagogical training, and classroom observations. (*Id*. ¶ 5.)

## B. Plaintiff's Employment with NYADI

In total, plaintiff was employed by NYADI for approximately twelve years, over two time periods: first, for approximately four years from 2003 to 2007, and then again for approximately eight years from August 21, 2008 until his termination on September 6, 2016. (*Id.* ¶ 1.) In 2003, plaintiff was hired as an instructor at NYADI. (*Id*. ¶ 6.) In 2007, plaintiff voluntarily resigned his instructor position and was rehired in August 2008. (*Id*. ¶ 7.) At all relevant times, plaintiff was employed as an automotive instructor by NYADI, and

3

his duties included teaching courses in advanced electronics/electrical. (*Id.* ¶ 8.)

NYADI required all instructors to obtain Automotive Service Excellence ("ASE") certifications. (*Id.* ¶ 9.)  As of November 25, 2014, Mr. Delorme had taken twenty-three ASE exams, four of which he passed. (*Id.* ¶ 11.)  Of the remaining exams, Mr. Delorme either failed or did not appear for the exam. (*Id.* ¶ 12.)  Over the duration of his employment at NYADI, plaintiff obtained three ASE certifications. (*Id.* ¶ 16.)

### C. May 28, 2015 Instructor Training

On May 28, 2015,[2] plaintiff, along with other instructors, attended a weekly presentation by Mr. Caballero entitled "Teaching Diverse Student Populations." (*Id.* ¶ 17; Ex. D, Aff. of Patrick Hart, dated June 28, 2019 ("Hart Aff."), at Ex. 1, "Instructor Training Sign-In Sheet,"; *see also* Ex. E, Caballero Dep. Tr., at 27:13-27:20; Ex. F, Aff. of Edward Boyle, dated July 15, 2019 ("Boyle Aff."), ¶ 5; Ex. G, Aff. of Peter

---

[2]    Plaintiff asserts that the date of the training was May 28, 2016, one year later than the date reported on the sign-in sheet. (Pl. 56.1 Stm't ¶ 17.)  However, in an opposition to summary judgment, the nonmoving party may not rely on unsupported recollections, assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995). The non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'" *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)), "[he] must set forth significant, probative evidence on which a reasonable fact-finder could decide in [his] favor," *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 468 (S.D.N.Y. 2011)(citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 256–57 (1986)). Plaintiff's own recollection of the date of the meeting does not, in light of the sign-in sheet proffered by defendants as evidence (*see* Ex. D), constitute sufficient probative evidence to create a dispute of material fact.

Licostie, dated July 15, 2019 ("Liscostie Aff."), ¶ 4; Ex. J,
Aff. of Balwant Basdeo, dated July 15, 2019, ¶ 3).)  During the
presentation, Mr. Caballero distributed handouts containing
information about classroom management, student engagement in
the classroom, and theories about how students learn.  (Def.'s
56.1 Stm't ¶ 18.)  The handouts Mr. Caballero distributed did
not reference grouping students by race.  (*Id.* ¶¶ 18-20.)
However, Mr. Caballero admitted to orally expressing his views
of the supposed benefits of grouping students by race to "learn
better or faster," including, for example, stating that "Latin
and Asian students tend to learn well when they're grouped
. . .; White students tend to learn better, typically, when they
work alone . . .; African American students tend to learn better
when the information is written on the board, not only
verbalized."  (Pl. 56.1 Stm't ¶ 19.)

       Plaintiff states that he made multiple complaints
about the comments Mr. Caballero made during the training, which
were ignored by his superiors, but there is no written record of
plaintiff's complaints.  (*Id.* ¶ 21.)

### D. Plaintiff's May 2015 Application for a Supervisor Position

       In May 2015, NYADI posted a notice about a job opening
for an Automotive Program Supervisor position.  (Def.'s 56.1
Stm't ¶ 22.*)*  The posting indicated that applicants must possess

5

"[a] minimum of 5 years of automotive industry/supervisory experience including a working knowledge in automotive electrical electronics, HVAC systems, brakes, steering and suspension." (*Id.*)  At the time of the May 2015 job posting, Mr. Delorme did not have the requisite five years of automotive supervisory experience. (*Id.* ¶ 23.)  On May 18, 2015, plaintiff submitted an application for the automotive supervisor position, along with a copy of his résumé, to Patrick Hart, the president of NYADI. (*Id.* ¶ 24.)  According to plaintiff's application, he did not have any supervisory experience, and had only two years of relevant automotive industry experience prior to working at NYADI. (*Id.* ¶ 26.)  NYADI interviewed plaintiff twice in consideration for the promotion. (*Id.* ¶ 27.)  Specifically, plaintiff interviewed with Mr. Hart, Mr. Caballero, and Robert Lagnese (the vice president of NYADI). (*Id.* ¶ 28.)  Ultimately, NYADI hired another applicant for the position, Scott Rose. (*Id.* ¶ 29.)  Mr. Rose had over thirty years of industry and management experience and held ASE certifications in fourteen different subject areas, including a master ASE certification as an automobile technician. (*Id.* ¶¶ 31, 32.)  At the time of his application, plaintiff had three current ASE certifications, had passed four other ASE exams, and did not hold master ASE certifications in any area. (*Id.* ¶¶ 33-36.)

### E. September 1, 2016 Alteration Between Plaintiff and Mr. Basdeo, Resulting in Plaintiff's Termination on September 6, 2016

Plaintiff's employment with NYADI was terminated on September 6, 2016, after an investigation by NYADI revealed that plaintiff physically assaulted Balwant Basdeo, a fellow NYADI instructor. (*Id.* ¶¶ 38-39.) The investigation was conducted by Mr. Hart, the president of NYADI, sometime between September 1 and September 6, 2016. (Pl. 56.1 Stm't ¶ 39.) Plaintiff was not interviewed as part of the investigation. (*Id.*) Mr. Hart interviewed and collected statements from four eyewitnesses to the incident: Edward Boyle, Peter Licostie, Farook Khan, and Patrick O'Reilly. (Ex. D, Hart Aff., ¶ 38.)

According to the results of the investigation, on September 1, 2016, plaintiff initiated a verbal and physical altercation with Mr. Basdeo on the premises of NYADI. (Def.'s 56.1 Stm't ¶ 40.) The verbal altercation was apparently in response to racially offensive comments Mr. Basdeo allegedly made to students earlier in the day. (*Id.* ¶ 41.) Plaintiff admitted that he put out his foot to stop Mr. Basdeo from leaving the conversation. (*Id.*)

Mr. Boyle, a witness to the incident, submitted an affidavit in this case and completed a contemporaneous incident report stating that he "saw Mr. Delorme approach Mr. Basdeo in a violent and threatening manner," and that "Mr. Basdeo informed

[him] that Mr. Delorme had assaulted him." (Ex. F, Boyle Aff., ¶¶ 10-17; "Incident Report" annexed to Boyle Aff. as Ex. 1.) Another witness, Mr. Licostie, also submitted an affidavit and completed an incident report stating that he "heard Mr. Delorme yelling at [Mr.] Basdeo," and that he "then saw Mr. Delorme grab Mr. Basdeo around the neck and turn him around." (Ex. G, Liscostie Aff., ¶¶ 7-11; "Incident Report" annexed to Licostie Aff. as Ex. 1.) According to Mr. Licostie, "Mr. Delorme then punched Mr. Basdeo in the face." (*Id.*) Mr. Khan submitted an affidavit and made a contemporaneous statement documenting that, "[w]ithout warning, Mr. Delorme approached Mr. Basdeo and grabbed him while trying to wrestle Mr. Basdeo away from where we were speaking." (Ex. H, Affidavit of Farook Khan, dated July 15, 2019 ("Khan Aff."), ¶¶ 3-6; "Khan Statement" annexed to Khan Aff. as Ex. 1.) According to Mr. Khan, "Mr. Basdeo was able to break free from Mr. Delorme's grasp initially, but then Mr. Delorme continued to wrestle and grab Mr. Basdeo a second time." (*Id.*) The final eyewitness, Mr. O'Reilly, submitted an affidavit and made a statement indicating that, as he was speaking with Mr. Khan and Mr. Basdeo, "Mr. Delorme . . . approached Mr. Basdeo and without warning, grabbed Mr. Basdeo and promptly put him in a headlock." (Ex. I, Affidavit of Patrick O'Reilly, dated July 15, 2019 ("O'Reilly Aff."), ¶¶ 3-7; "O'Reilly Statement" annexed to O'Reilly Aff. as Ex. 1.)

According to Mr. O'Reilly, "Mr. Delorme dragged Mr. Basdeo away from Mr. Khan's vehicle and punched Mr. Basdeo in the face," and that "[p]rior to this, Mr. Basdeo was talking to Mr. Khan and myself and had not addressed Mr. Delorme." (*Id.*)

At the time of the incident, NYADI had a Personnel and Benefits Handbook which contained a code of conduct for employees, as well as the possible consequences for violating that code. (Def.'s 56.1 Stm't ¶ 44.) Plaintiff confirmed he was aware of NYADI's employment policy, including the possible consequences for violating it. (*Id.* ¶ 45.) NYADI's employment policy forbade fighting, threatening another person, or verbally abusing others with obscene or foul language. (*Id.*) Plaintiff testified that he understood that the consequences of violating NYADI's policy could include termination. (*Id.* ¶ 46.)

Plaintiff's employment with NYADI was terminated on September 6, 2016. (*Id.* ¶ 38.)

### F. Instructors Hired by NYADI Allegedly to Replace Plaintiff After his Termination

Plaintiff claims, without evidentiary support, that after his termination, NYADI hired two instructors, John Moore and Radames Sanchez, to replace him. (*Id.* ¶ 49.) Mr. Sanchez and Mr. Moore were both hired *before* plaintiff was terminated. (*Id.* ¶ 50.) Defendants have proffered evidence that Mr. Sanchez and Mr. Moore were hired to teach different courses than

9

plaintiff.  (*Id.* ¶ 51.)  Specifically, NYADI hired Mr. Sanchez to teach courses in chassis and/or brake systems, and Mr. Moore to teach transmissions.  (*Id.*)  Neither Mr. Sanchez nor Mr. Moore were hired to teach plaintiff's courses in advanced electronics/electric, and plaintiff did not teach courses in transmissions, chassis, and/or brake systems.  (*Id.* ¶ 52.)

### G. Plaintiff's Instant Federal Discrimination Complaint

On December 19, 2016, plaintiff filed an initial administrative complaint with the Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia*, that defendants treated him differently based on his race.  (*Id.* ¶ 55.)  On August 29, 2017, the EEOC issued a Notice of Right to Sue.  (*Id.* ¶ 56.)

Plaintiff commenced this action on November 27, 2017, asserting claims of discrimination based on race and national origin, and retaliation, pursuant to Title VII, the New York State Human Rights Law, and the New York City Human Rights Law. Plaintiff alleges, *inter alia*, that defendants discriminated against him on the basis of his race and national origin by denying his application for a promotion and by terminating him, and retaliated against him by terminating his employment because he complained about the statements Mr. Caballero made during the May 2015 training.

10

By stipulation filed July 12, 2019, plaintiff voluntarily dismissed his failure to promote claim brought pursuant to Title VII as untimely,[3] the dismissal of which the Court "so-ordered" on July 17, 2019.  (ECF No. 31., *so ordered* on 7/12/2019.)

## LEGAL STANDARD

Summary judgment shall be granted to a movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).  No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

When bringing a motion for summary judgment, the movant carries the burden of demonstrating the absence of any disputed issues of material fact and entitlement to judgment as

---

[3]    The Court therefore evaluates plaintiff's claims stemming from the failure to promote as pleaded pursuant to the NYSHRL and the NYCHRL only.

11

a matter of law. *Rojas*, 660 F.3d at 104.  In deciding a summary
judgment motion, the court must resolve all ambiguities and draw
all reasonable inferences against the moving party. *Flanigan v.
Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
587 (1986)).  A moving party may indicate the absence of a
factual dispute by "showing . . . that an adverse party cannot
produce admissible evidence to support the fact." Fed. R. Civ.
P. 56(c)(1)(B).  Put another way, "[w]here the record taken as a
whole could not lead a rational trier of fact to find for the
non-moving party, there is no 'genuine issue for trial.'"
*Matsushita Elec. Ind. Co.*, 475 U.S. at 587.

Once the moving party has met its burden, "the
nonmoving party may not rest upon mere conclusory allegations or
denials." *Castro v. Cty. of Nassau*, 739 F. Supp. 2d 153, 165
(E.D.N.Y. 2010) (citing *R.G. Grp., Inc. v. Horn & Hardart Co.*,
751 F.2d 69, 77 (2d Cir. 1984)).  Rather, "the nonmoving party
must come forward with admissible evidence sufficient to raise a
genuine issue of fact for trial in order to avoid summary
judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d
Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-
23 (1986)).  In deciding a motion for summary judgment, the
court is dutybound not to weigh evidence or assess the

credibility of witnesses.  *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994).

      "Employment discrimination cases raise special issues on summary judgment." *Kenney v. New York City Dep't of Educ.*, No. 06-cv-5770, 2007 U.S. Dist. LEXIS 77926, at *7 (S.D.N.Y. Oct. 22, 2007).  Specifically, employment discrimination cases that involve a dispute concerning the "employer's intent and motivation" may not be suitable for summary judgment. *Id.; see also Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). The Second Circuit has noted, however, that it "went out of [its] way to remind district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quotation omitted); *see also Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 148 (2000) ("trial courts should not 'treat discrimination differently from other ultimate questions of fact'") (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)); *Holcomb*, 521 F.3d at 137 ("Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment.").

**DISCUSSION**

Plaintiff argues that NYADI's failure to promote him in 2015, and NYADI's termination of him in 2016, were discriminatory acts based on his race and national origin in violation of federal, state, and local law. (*See* Pl. Opp. at 8-16.)  In addition, plaintiff argues that his termination was in retaliation for the complaints he allegedly filed after Mr. Caballero made discriminatory remarks at a training session. (*See id.* at 16-19.)

**I.   Plaintiff's Race and National Origin Discrimination Claims Fail under Title VII and State Law**

**A. Legal Standard**

Under the *McDonnell Douglas* framework established by the Supreme Court, "a plaintiff must first establish a *prima facie* case of discrimination by showing: (1) []he belonged to a protected class, (2) was qualified for the position []he held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent." *Fanelli v. New York*, 200 F. Supp. 3d 363, 370 (E.D.N.Y. 2016) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003)).  "This burden is minimal and does not require specific evidence of discrimination." *Brown v. Baldwin Union Free Sch. Dist.*, 603 F. Supp. 2d 509, 514 (E.D.N.Y. 2009) (citing *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006)).

14

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Joseph*, 465 F.3d at 90 (quotation omitted). "Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (alternation and quotation omitted); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) ("A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment."). An employer's failure to promote an employee can constitute an adverse action for purposes of a claim of discrimination. *See Anderson v. Nassau Cty. Dep't of Corr.*, 558 F. Supp. 2d 283, 298 (E.D.N.Y. 2008).

The plaintiff "bears the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Moschetti v. N.Y.C. Dep't of Educ.*, 778 F.

App'x 65, 65-66 (2d Cir. 2019).  "The employer's burden of
showing a legitimate non-discriminatory reason for its actions
is not a particularly steep hurdle." *Whethers v. Nassau Health
Care Corp.*, 956 F. Supp. 2d 364, 375 (E.D.N.Y. 2013) (citing
*Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009)),
*aff'd,* 578 F. App'x 34 (2d Cir. 2014).  "To rebut an employer's
proffered non-discriminatory rationale for its actions and
withstand summary judgment, a plaintiff must present more than
allegations that are 'conclusory and unsupported by evidence of
any weight.'" *Id.* (quoting *Smith v. Am. Ex. Co.*, 853 F.2d 151,
154-55 (2d Cir. 1988)); *see also Chan v. Donahoe*, 63 F. Supp. 3d
271, 297 (E.D.N.Y. 2014) ("In order to successfully rebut an
employer's purported non-discriminatory reason for the
employment action, the plaintiff must establish pretext.").
"Thus, when the district court considers whether the evidence
can support a verdict of discrimination on a motion for summary
judgment, it must analyze the evidence, along with the
inferences that may be reasonably drawn from it, and decide if
it raises a jury question as to whether the plaintiff was the
victim of discrimination." *Grady v. Affiliated Cent., Inc.*, 130
F.3d 553, 560 (2d Cir. 1997) (quotation omitted).

"Claims brought under the NYSHRL are analyzed
identically and the outcome of an employment discrimination
claim made pursuant to the NYSHRL is the same as it is under

. . . Title VII." *Hyek v. Field Support Servs., Inc.*, 461 F.
App'x 59, 60 (2d Cir. 2012).  Accordingly, the Court will
address plaintiff's claims of discrimination under Title VII and
the NYSHRL together.  The Court will separately discuss
plaintiff's discrimination claims under the NYCHRL.

### B. Application

Plaintiff satisfies the first prong of a *prima facie*
case pursuant to the *McDonnell Douglas* framework.  As a black
Haitian man, plaintiff is a member protected classes.  Plaintiff
alleges that he suffered two distinct adverse employment actions
as a result of discrimination: the May 2015 denial of the
promotion he applied for, and defendants' termination of his
employment in 2016.

With respect to plaintiff's NYSHRL claim for failure
to promote, NYADI's denial of a promotion fails to meet the
second prong of the *McDonnell Douglas* framework, because he did
not meet the minimum qualifications for the position he sought.
Regarding his termination, plaintiff meets the second prong
because he was employed as an instructor with NYADI for twelve
years and had three current ASE certifications, demonstrating
his qualifications for his position.  The termination claim,
however, fails the fourth prong of the *McDonnell Douglas*
framework, because plaintiff is unable to show circumstances
giving rise to an inference of discriminatory intent.  Even if

he could make out a *prima facie* case, defendants have put forth
uncontradicted evidence that there was a non-discriminatory
reason for his termination—specifically, a physical altercation
at work—and plaintiff has offered no evidence suggesting that
the reason was pretext.

i.   Failure to Promote

Plaintiff cannot make out a *prima facie* case under the
NYSHRL that NYADI's decision to give Mr. Rose a position over
him in 2015 was a discriminatory act.  To meet the second prong
of *McDonnell Douglas*, plaintiff must show that he was
objectively qualified for the position to which he sought a
promotion.  *See Barrow v. Ford Motor Co.*, No. 03-cv-621, 2007 WL
1655660, at *20 (W.D.N.Y. June 5, 2007).  The posting for the
supervisory position plaintiff applied for indicated that
applicants must possess "[a] minimum of 5 years of automotive
industry/supervisory experience including a working knowledge in
automotive electrical electronics, HVAC systems, brakes,
steering and suspension." (Def.'s 56.1 Stm't ¶ 22.)  Mr.
Delorme concedes that he did not have the requisite five years
of supervisory experience.  (*See* Pl. 56.1 Stm't ¶ 22.)

Moreover, plaintiff cites no evidence, circumstantial
or otherwise, that NYADI's decision to select Mr. Rose was due
to plaintiff's race or national origin.  And defendants have
offered a straightforward, non-discriminatory reason that they

18

did so: Mr. Rose was more qualified.  (*See* Def.'s 56.1 Stm't ¶ 30.)  Plaintiff disputes whether Mr. Rose was actually more qualified, but that factual dispute is not enough to preclude summary judgment.  Under the *McDonnell Douglas* framework, Mr. Delorme must "establish that the defendant's reason" for promoting Mr. Rose over him "is in fact pretext for unlawful discrimination." *Moschetti*, 778 F. App'x at 65-66.

Plaintiff has failed to do so.  Plaintiff's argument focuses on his own qualifications, and asserts that Mr. Rose's application, cover letter, and résumé did not necessarily demonstrate his superior qualifications. (*See* Pl. Opp. at 15-16.)  Plaintiff's attempt to create a factual dispute about whether Mr. Rose was actually more qualified, however, is irrelevant.  The undisputed evidence before the Court establishes that Mr. Rose had more supervisory experience and more ASE certifications, and thus plaintiff cannot show that NYADI's stated reason for selecting him over plaintiff was pretext for discrimination.  *See Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 375 (S.D.N.Y. 2014) (summary judgment granted on failure to promote claim where "[t]he evidence submitted shows that plaintiff indeed had less . . . experience").

19

There is thus no triable issue as to whether NYADI's decision to fill the position with Mr. Rose instead of plaintiff violated the NYSHRL.[4]

### ii.   Termination

Plaintiff also fails to make out a *prima facie* case that his termination was the result of discrimination, because he has proffered no evidence that supports an inference of discrimination.  Plaintiff argues that such an inference can be drawn because a similarly-situated employee, Mr. Basdeo, was not terminated for his role in the altercation, or for his allegedly discriminatory comments.  (*See* Pl. Opp. at 9.)  But the uncontradicted evidence suggests that Mr. Delorme and Mr. Basdeo were *not* similarly situated; all four eyewitnesses interviewed by NYADI stated that Mr. Delorme was the aggressor in the incident.  (*See* Exs. F-I.)  Plaintiff, at his deposition, admitted that Mr. Basdeo tried to walk away from him after plaintiff approached him.  (Def.'s 56.1 Stm't ¶ 41.)

If Mr. Basdeo in fact made offensive comments to students, then perhaps NYADI should also have investigated him and taken action against him, assuming NYADI was aware of the comments.  Whether or not NYADI did so, however, is not relevant to whether the termination action taken against plaintiff was

---

[4]     Plaintiff previously dismissed his Title VII failure to promote claim.

discriminatory.  When faced with a situation in which two employees were involved in a physical altercation, NYADI investigated the incident and decided to terminate the aggressor.  Merely because NYADI did not also terminate or take adverse action against the non-aggressor does not raise a triable inference of discrimination.

Furthermore, Mr. Basdeo was a fellow instructor, and not plaintiff's supervisor.  Even if Mr. Basdeo made offensive remarks to students earlier in the day, courts have held that "verbal comments made by individuals not involved in making the adverse employment decision cannot themselves give rise to an inference of racial discrimination." *Anderson v. Hertz Corp.,* 507 F. Supp. 2d 320, 328 (S.D.N.Y. 2007), *aff'd*, 303 F. App'x 946 (2d Cir. 2008); *see also Yarde v. Good Samaritan Hosp.,* 360 F.Supp.2d 552, 560 (S.D.N.Y. 2005); *Minton v. Lenox Hill Hosp.,* 160 F.Supp.2d 687, 695 (S.D.N.Y.2001).  If Mr. Basdeo made offensive comments to students earlier in the day, and those comments were the motivating factor behind plaintiff's aggression, the alleged comments, on their own, do not raise an inference that plaintiff's subsequent termination (in which Mr. Basdeo was not involved) was discriminatory.  Plaintiff must "link the adverse employment action to a discriminatory motivation," or else his "claims fail." *Sotomayor v. City of*

*New York*, 862 F. Supp. 2d 226, 258 (E.D.N.Y. 2012), *aff'd* 713 F.3d 163 (2d Cir. 2013).

Even assuming, *arguendo,* that plaintiff established a *prima facie* case, defendants presented a legitimate non-discriminatory reason for plaintiff's termination: namely, the physical altercation in which the employer found plaintiff to be the aggressor against Mr. Basdeo.  Plaintiff has not offered evidence to demonstrate that defendants' stated reason for his dismissal was a pretext for discriminatory motives, and it appears from the record that NYADI made the decision only after investigating and interviewing four eyewitnesses.  "An employer's good faith *belief* that an employee engaged in misconduct is a legitimate reason for terminating [him]." *Droutman v. N.Y. Blood Ctr., Inc.,* No. 03-cv-5384, 2005 WL 1796120, at *9 (E.D.N.Y. July 27, 2005) (emphasis in original).

Defendants conducted an investigation and took statements from at least four witnesses, each of whom reported hearing or seeing a physical altercation between plaintiff and Mr. Basdeo.  The undisputed evidence demonstrates that defendants had a good faith belief, based on their investigation, that plaintiff initiated the physical altercation with Mr. Basdeo.  The altercation was in violation of NYADI's employee handbook, of which plaintiff was aware.  Courts in this circuit have held that violations of employer bans on fighting

22

constitute a legitimate non-discriminatory reason for terminating an employee. *See Stepheny v. Brooklyn Hebrew School for Special Children,* 356 F. Supp. 2d 248, 260 (E.D.N.Y. 2005) ("Defendant has submitted indisputable evidence that it terminated [plaintiff] because she participated in [a] fight in the School's parking lot . . . ."); *Anderson,* 507 F. Supp. 2d at 330 ("Plaintiff admitted that he participated in [a fight], and even if his participation could be construed as self-defense, there is no dispute that Plaintiff's activities were of the sort specifically proscribed by Defendant's Rules and Regulations.").

As plaintiff has failed to establish a *prima facie* case of discrimination regarding his termination, and because NYADI terminated plaintiff for the legitimate non-discriminatory reason of engaging in a physical altercation with a co-worker, defendants' motion for summary judgment is granted on the claims of discrimination under Title VII and the NYSHRL.

## II. Plaintiff's Race and National Origin Discrimination Claims Fail under Local Law

### A. Legal Standard

The NYCHRL makes it "unlawful for an employer or an employee or agent thereof" to discharge an employee based on, *inter alia*, the employee's race or national origin. N.Y.C. Admin. Code § 8-107(1)(a). It is also unlawful to discriminate against such person in "terms, conditions or privileges of

employment." *Id.* Under the NYCHRL, "an employer is strictly liable for the unlawful harassment of employees by their supervisors or managers, regardless of whether the harassment culminates in a tangible employment action." *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 657, 658 (E.D.N.Y. 2015). To sustain a discrimination claim under the NYCHRL, a plaintiff need not establish a materially adverse employment action. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013).

Although the NYCHRL was formerly construed to be coextensive with its federal and state counterparts, the law was amended in 2005 and requires an independent analysis. *Id.* at 109. Courts must construe the NYCHRL's provisions "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible[.]" *Id.* (citing *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (2011)).

**B. Application**

Even under the broader construction required by the NYCHRL, plaintiff cannot make out failure to promote or termination claims of discrimination based on his race or national origin. "As with [plaintiff]'s federal and state discrimination claims, []he has not shown that []he was treated differently with respect to [his] termination because of any race or [origin]-based discriminatory motives harbored by

24

individuals at [NYADI]." *Mauze v. CBS Corp.*, 340 F. Supp. 3d
186, 209 (E.D.N.Y. 2018), a*dhered to on reconsideration*, No. 15-
cv-4905, 2019 WL 8137641 (E.D.N.Y. Jan. 23, 2019).

As discussed above, defendants had legitimate, non-
discriminatory reasons both for choosing Mr. Rose (who was more
qualified) for a job instead of plaintiff, and for terminating
plaintiff (after he started a physical altercation with a co-
worker). Accordingly, plaintiff cannot succeed on a claim for
discrimination under the NYCHRL, which still requires a showing
of some disparate treatment. Plaintiff contends that he was
treated differently than Mr. Rose and Mr. Bosdeo (Pl. Opp. at
19), but Mr. Rose was more qualified and Mr. Basdeo was found
not to be an aggressor in the altercation. Thus, plaintiff
cannot show disparate treatment, and cannot succeed under the
NYCHRL. *See Sotomayor,* 862 F. Supp. 2d at 258 (even under
NYCHRL, "a plaintiff must still link the adverse employment
action to a discriminatory motivation"); *see also Moore v.
Metro. Transp. Auth.*, 999 F. Supp. 2d 482, 501 (S.D.N.Y. 2013)
("Even under the liberal NYCHRL standard, no jury viewing this
evidence could find [defendant] liable under either *McDonnell
Douglas* or a mixed motive analysis.").

## III. Plaintiff's Retaliation Claim Fails under Title VII, State Law, and Local Law

### A. Legal Standard

The federal anti-retaliation statute "seeks to secure th[e] primary objective [of] preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [Title VII's] basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 63 (2006). As with discrimination claims, federal and state retaliation claims are governed by the *McDonnell Douglas* framework. *Zann Kwan v. Andalex Grp. LLC,* 737 F.3d 834, 843 (2d Cir. 2013).

To establish a *prima facie* case of retaliation under federal and state law, a plaintiff must show (1) participation in a protected activity, (2) the defendant's knowledge of the protected activity, (3) an adverse employment action, and (4) a causal connection between the protected activity and the adverse employment action. *Id.* at 844. Once the plaintiff makes a *prima facie* showing, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the employment action. *Id.* at 845 (citing *United States v. Brennan,* 650 F.3d 65, 93 (2d Cir. 2011)). After a non-retaliatory reason has been articulated, the presumption of retaliation drops, and

26

the plaintiff must then demonstrate the non-retaliatory reason is a mere pretext for retaliation. *Id.*

A plaintiff "alleging retaliation in violation of Title VII must show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 360 (2013)). This does not require proof that retaliation was the only cause for the employer's action, but that the adverse action would not have occurred absent the retaliatory motive. *Id.* at 846. "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Id.*

With respect to retaliation claims, courts consider a broader range of conduct than they do for discrimination claims. Unlike the discrimination provision, the anti-retaliation provision of Title VII is not limited to discriminatory actions that affect the terms and conditions of employment. *Burlington,* 548 U.S. at 63. Courts properly assess "whether the actions of an employer could dissuade a reasonable worker from making a charge of discrimination." *Conforti v. Sunbelt Rentals, Inc.,* 201 F. Supp. 3d 278, 302 (E.D.N.Y. 2016).

"The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a *prima facie* case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy [the plaintiff]'s burden to bring forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). "[E]mployer actions prohibited by Title VII's anti-discrimination provision are limited to conduct that affects the terms and conditions of employment, while under Title VII's anti-retaliation provision, the challenged action need not affect the terms and condition of employment in order to constitute unlawful retaliation." *Siddiqi v. New York City Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 372 (S.D.N.Y. 2008) (citing *Burlington,* 548 U.S. at 63-64).

The "NYCHRL's retaliation provision is broader than Title VII's[,] protecting plaintiffs who 'oppos[e] any practice forbidden under' the law from conduct 'reasonably likely to deter a person engaging in such action.'" *Id.* at 76 (citing *Mihalik*, 715 F.3d at 112). "While the NYCHRL has a less demanding standard [for retaliation], a plaintiff still must establish that there was a causal connection between [his] protected activity and the employer's subsequent action, and must show that a defendant's legitimate reason for [his] termination was pretextual or motivated at least in part by an

impermissible motive." *Hughes v. Twenty-First Century Fox,
Inc.*, 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018) (quotation
omitted).

### B. Application

Plaintiff argues that his September 2016 termination
was unlawful retaliation as a result of his complaints about the
comments Mr. Caballero made during the training session that
occurred in May 2015. (*See* Pl. Opp. at 16-17.)  As an initial
matter, plaintiff contends that there is a factual dispute
regarding when the comments and corresponding complaints were
made; plaintiff argues that the comments by Mr. Caballero were
made in May 2016, and the date on the sign-in sheet, indicating
the training occurred in May 2015, was incorrect. (*Id.* at 17.)
However, in support, plaintiff has offered only his own
testimony, and Mr. Caballero's testimony that he normally held
his training sessions on Wednesdays. (*Id.*)  But even if the
sign-in sheet were off by a year, and the training actually
occurred on May 28, 2016, as plaintiff recalls, that was a
Saturday, not a Wednesday.  Plaintiff's speculation about the
date of the training, in the face of an admissible document
listing the date, does not create a triable issue as to when the
training occurred.  Thus, there is insufficient temporal
proximity between the protected activity and the allegedly
retaliatory act for a *prima facie* showing that plaintiff's

29

termination in September 2016 was linked to his compliants in
May 2015. *See Elhanafy v. Shinseki*, No. 10-cv-319, 2012 WL
2122178, at *17 (E.D.N.Y. June 12, 2012) ("In order for temporal
proximity to establish causality, the intervening period must be
'very close,'—generally no more than a couple months, at
most[.]") (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S.
268, 272 (2001)).

In any event, plaintiff's claim fails under federal
and state law because he cannot establish that his alleged
complaints were a "but-for" cause of his termination. *See
Nassar,* 570 U.S. at 360. As described above, plaintiff was
terminated after defendants conducted an investigation, and
determined that plaintiff violated their employment policies
when he engaged in an altercation with a co-worker on September
1, 2016. No reasonable jury could find that his termination,
five days after the incident and following an investigation, was
in retaliation for complaints he made more than one year
earlier. Even under the broader NYCHRL, plaintiff could not
show that his termination was linked to his complaints, given
the investigation and the good faith belief on the part of NYADI
that plaintiff instigated a physical altercation with a co-
worker.

Likewise, plaintiff could not show that his complaint
was a "but for" cause of NYADI's failure to promote him (which,

30

under plaintiff's version of the facts, occurred one year before

he made any complaints).  As discussed above, NYADI has

proffered evidence of valid reasons for choosing a different

employee for the position, Mr. Rose, and there has been no

showing of pretext.

Accordingly, defendants' motion for summary judgment

is granted on the claims of retaliation pursuant to Title VII,

the NYSHRL, and the NYCHRL.

## CONCLUSION

For the reasons stated above, defendants' motion for

summary judgment is granted in its entirety.  The Clerk of Court

is respectfully requested to enter judgment for defendants and

close this case.

**SO ORDERED**

Dated:      September 30, 2020
            Brooklyn, New York


                                    _____
                                                /s/
                                    **HON. KIYO A. MATSUMOTO**
                                    United States District Judge
                                    Eastern District of New York